## STATE v. DAVID H. LAWRENCE.[1]

June 11, 1915.

Nos. 19,182—(8).

**Indictment for larceny — proof.**

1. Where the indictment charges that defendant was the agent of B, and as such agent had money in his possession belonging to B which he feloniously appropriated to his own use, it is incumbent upon the prosecution to prove that he was such agent and that the money was the property of his principal.

**Authority of agent.**

2. Authority on the part of defendant to receive payment of the principal of a loan, secured by notes and mortgage which were not in defendant's possession, cannot be inferred from the fact that the loan was originally made through him and that he had transmitted payments of interest to the mortgagee as they became due.

Defendant was indicted by the grand jury, tried in the district court for Lake county before Cant, J., and a jury, and convicted of grand larceny in the second degree. Defendant's motion to acquit

[1] Reported in 153 N. W. 123.

---

Note.—The authorities passing upon embezzlement as affected by want of authority of defendant to receive the money or property in the first instance are reviewed in the note in 17 L.R.A.(N.S.) 531. As to the effect of fact that agent does not have possession of security upon question of his authority to receive payment, see note in 23 L.R.A.(N.S.) 414.

and discharge defendant or for a new trial was denied. From the order denying his motion, defendant appealed. Reversed.

John B. Richards, for appellant.

Lyndon A. Smith, Attorney General, Alonzo J. Edgerton, Assistant Attorney General, and J. Gilbert Jelle, County Attorney, for respondent.

TAYLOR, C.

The indictment charges that on May 1, 1909, at the city of Two Harbors in the county of Lake, defendant as the agent of Celia Barrett, had in his possession the sum of $500 in money, the property of said Celia Barrett, and with intent to deprive her of her said property, did then and there wrongfully and feloniously appropriate the same to his own use. The trial resulted in a verdict of guilty. Thereafter defendant made a motion for an order of acquittal and discharge, and, in case that should be denied, for an order setting aside the verdict and granting a new trial. Both motions were denied and he appealed.

The indictment charged that the money in question was the property of Mrs. Barrett and was received by defendant as her agent; and it was incumbent upon the prosecution to prove these allegations. State v. Nelson, 79 Minn. 373, 82 N. W. 674; State v. White, 108 Minn. 346, 122 N. W. 448; State v. Farrington, 59 Minn. 147, 60 N. W. 1088, 28 L.R.A. 395. Defendant admits receiving the money, but contends that it was not the property of Mrs. Barrett, and that he did not receive it as her agent. The prosecution offered no direct evidence that Mrs. Barrett had employed defendant as her agent, but claim that the jury could legitimately infer the existence of such agency from the conduct and acts of the parties.

The facts are briefly as follows: Defendant was a practicing attorney and in 1905 was judge of probate of Lake county. In that year Mrs. Barrett probated the estate of her husband, who had died intestate the preceding December. She employed no attorney and apparently looked to defendant for such advice as she needed in the matter. The estate consisted of $4,500 in money, and in addition thereto she received $3,000 life insurance. She discussed with de-

fendant the matter of loaning this money and he informed her that the Nordby Mercantile Co. of Two Harbors desired a loan of $4,500, for the purpose of constructing an addition to its building. Thereafter they had some correspondence concerning the proposed loan, and at his instance she came from her home to Two Harbors and examined the property offered as security therefor. She was satisfied with the security and made the loan. Defendant had previously procured the execution of the notes and mortgage by the Mercantile Co. and had them in his possession. He delivered them to Mrs. Barrett and received the money from her at the same time. The notes were four in number, were dated July 10, 1905, and bore interest at the rate of seven per cent per annum payable annually. The first three notes were for the sum of $1,000 each and were payable one, two and three years from date respectively, and the fourth note was for the sum of $1,500 and was payable four years from date. About the same time or shortly thereafter she made another loan, in substantially the same manner, of $2,200 to one Martin Edwardson upon property also located in Two Harbors. The interest upon the loan to the Nordby Mercantile Co. was paid to her by defendant in 1906, 1907 and 1908. As the instalments of principal became due, the Mercantile Co. desired to have the time for payment extended and defendant so informed Mrs. Barrett. She assented thereto and the time for payment was considered as extended from year to year, but without any written agreement to that effect.

In April, 1909, J. Oreckovsky purchased the Nordby Mercantile Co. property and assumed the mortgage. He employed defendant to examine the title for him, and testifies that he was informed by defendant that defendant represented Mrs. Barrett in respect to the mortgage. Defendant denies making such statement. It is conceded, however, that, by an arrangement between them, Oreckovsky paid to defendant, on April 24, 1909, the sum of $500 as principal, and $251, the interest to that date, with the expectation that an extension of another year would be given upon the remainder of the principal, and received from defendant the following receipt:

"Duluth, Minn., ———

"Received from J. Oreckovsky Seven Hundred Fifty one Dollars—

$500.00 to apply on principal and $251.00 in full for interest to date on Celia Barrett mortgage. April 24, 1909.

"David H. Lawrence,

"Attorney."

Thereafter (when does not appear) Mrs. Barrett informed defendant that she wanted the rate of interest increased to eight per cent, and on July 28, 1909, he wrote her that he had taken up the matter with Oreckovsky and that Oreckovsky would not pay the increased rate but would pay up the loan. She permitted the loan to continue at the same rate and on August 25, 1909, defendant paid her $315, the interest upon the full $4,500.

In addition to his law business defendant also conducted an insurance and loaning business and had three employees in his office, one of whom, his stenographer and bookkeeper, had authority to sign checks. When the interest became due in 1910, Oreckovsky paid defendant $280, the interest on $4,000; and on August 2, 1910, defendant's bookkeeper, apparently without defendant's knowledge, mailed a check for $280 to Mrs. Barrett for such interest. She inquired of defendant why she had received only $280 instead of $315, and he explained the matter by saying that while he was away a mistake had been made in settling with Oreckovsky, and only that amount had been left with him, but assured her that he would see that she received the remainder. To subsequent inquiries he replied to the effect that he had not obtained the money from Oreckovsky, but expected to do so; and the matter dragged along until September, 1911, when she wrote Oreckovsky, and then for the first time learned that Oreckovsky had paid defendant $500 upon the principal in April, 1909. Defendant subsequently made the claim that he had overlooked and forgotten this payment.

The loan to the Nordby Mercantile Co. and to Edwardson were the only loans made by Mrs. Barrett. She dealt with defendant only and never saw or communicated with either of the mortgagors, nor with Oreckovsky until September, 1911. The mortgagors executed the notes and mortgages and delivered them to defendant. He delivered them to Mrs. Barrett and thereupon received the money, and she has retained the exclusive possession of them ever since. They

were never afterward in defendant's possession. He charged the mortgagors a commission for procuring the loans, but never made any charge against Mrs. Barrett, either for making the loans or for collecting the interest thereon.

On making the loans, Mrs. Barrett paid her money to defendant and at the same time received the securities from him. When the interest became due in 1906 and in 1907, she applied to him for it at his office and he paid it to her. As instalments of the principal became due, he informed her that the mortgagors desired an extension of time and she granted it. The payment in question is the first and only payment upon the principal ever received by defendant. Mrs. Barrett did not expect a payment at that time as she had granted an extension until July 10. She testified to the effect that she never authorized defendant to collect any part of the principal, did not expect him to do so, and never had any intimation that he had received the money in question, until more than two years after he received it. Defendant testified to the same effect. The circumstances attending the making of the loans and the payment of the interest are more consistent with the theory that defendant was the representative of the mortgagors, than with the theory that he represented Mrs. Barrett. But even if he represented her in making the loan and in collecting the interest, it is settled in this state by a long line of decisions that that fact did not give him authority to collect the principal. As neither the notes nor the mortgage were in his possession and the extension of time had not expired, he did not have even sufficient apparent authority to receive the money for Mrs. Barrett to enable the mortgagor to invoke the doctrine of estoppel against her in the event that she should bring a civil action to collect the amount from the mortgagor. Trull v. Hammond, 71 Minn. 172, 73 N. W. 642; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Rand v. Perkins, 74 Minn. 16, 76 N. W. 950; Dwight v. Lenz, 75 Minn. 78, 77 N. W. 546; Smith v. Fletcher, 75 Minn. 189, 77 N. W. 800; Budd v. Broen, 75 Minn. 316, 77 N. W. 979; Thomas v. Swanke, 75 Minn. 321, 77 N. W. 981; Schenk v. Dexter, 77 Minn. 15, 79 N. W. 526; White v. Madigan, 78 Minn. 286, 80 N. W. 1125; St. Paul

National Bank v. Cannon, 46 Minn. 95, 48 N. W. 526, 24 Am. St. 189; Park v. Cross, 76 Minn. 187, 78 N. W. 1107, 77 Am. St. 630.

It goes without saying that evidence which would not sustain a finding in a civil action that defendant received the money as the agent of Mrs. Barrett, is not sufficient to sustain such finding in a criminal prosecution.

Order reversed.