WILLIAM H. RAND v. EDWARD A. PERKINS and Others.

October 20, 1898.

Nos. 11,104—(31).

Injunction — Foreclosure of Mortgage — Finding not Supported by Evidence—Principal and Agent.

Held, that the finding of the trial court in this action, to the effect that the owner of mortgaged premises paid the amount due on the mortgage to one Kelley, as the duly-authorized agent of the defendant mortgagee, was not supported by the evidence.

Action in the district court for Dodge county to enjoin the foreclosure of a mortgage, and to cancel the mortgage of record. The cause was tried before Buckham, J., without a jury, and judgment was ordered for plaintiff. The motion of defendant Perkins for a new trial was denied, and judgment was entered in favor of plaintiff. From the judgment, defendant Perkins appealed. Reversed.

*P. M. Woodman,* for appellant.

*Robert Taylor,* for respondent.

COLLINS, J.

This is an action to enjoin the foreclosure of a mortgage made by one Albert J. Hastings in favor of defendant Edward A. Perkins, and to have such mortgage canceled of record on the ground that the mortgage had been paid to one Austin F. Kelley, as the agent of defendant Perkins, authorized to receive payment. The defense was that the mortgage had not been paid. The court, trying the case without a jury, found that on or about March 1, 1896, one De Witt, who then purchased the land from Austin F. Kelley, paid to him the full amount due on said mortgage, and that said Kelley was then and there the agent of the defendant mortgagee, and duly authorized to accept and receive payment as such agent. Judgment for plaintiff was ordered, and this appeal is from the judgment entered subsequently to a denial of defendant's motion for a new trial.

It is contended that the findings above mentioned are wholly unsupported by the evidence. The facts conceded or well established at the trial are that in 1887 Kelley, one of the noted firm of A. F. & L. E. Kelley, of Minneapolis, was the owner of several tracts of land, including the one over which this litigation arises, in Dodge county; the title of record being in Albert J. Hastings, one of Kelley's "straw men." A. F. & L. E. Kelley were then, and up to the time of their assignment in 1896 remained, the agents of this defendant, who resided in Boston, Massachusetts, for the purpose of loaning money on real estate, and it is apparent that they loaned several thousand dollars during this period of time, and also collected interest and principal for and on account of these loans; remitting the money collected or again loaning it, as defendant

74 M.—2

might direct.   June 1, 1887, at the solicitation of Austin F. Kelley and for his sole benefit, Hastings made and delivered to him the note and mortgage in controversy.   The mortgage was forwarded with the note to defendant mortgagee, after being put upon record, and both instruments have ever since remained in his possession. He was not informed of Kelley's interest in the mortgaged land, and had no knowledge of it.   Kelley charged the amount of the loan to defendant, and retained said amount out of collections made by the firm for defendant.   The amounts due on interest coupons were remitted to defendant or credited to his account by the Kelleys up to July 1, 1896.

Hastings conveyed to Kelley on July 1, 1887, several of the tracts of land before mentioned, including that in dispute, which conveyance contained the usual covenants found in a warranty deed, including a recital that there was a mortgage upon the conveyed land of $8,200, which mortgage Kelley, as grantee, assumed and agreed to pay.   This deed was duly recorded.   August 30, 1895, Kelley sold and conveyed the mortgaged tract to one De Witt for the sum of $1,575; the sale having been negotiated by H. C. Rand, plaintiff's father, acting in De Witt's interest and being paid by him for his services.   It further appeared on the trial that H. C. Rand had for some years made collections for the Kelleys in Dodge county.   The conveyance made by Kelley to De Witt was a special warranty deed, the grantor covenanting solely against his own acts.   At this time it appeared of record, and De Witt and his agent, Rand, knew that Hastings had conveyed the mortgaged land to Kelley.

It was established by the evidence that when Rand received the deed from Kelley to his principal, De Witt, in August, 1895, he paid to the former the sum of $1,575, belonging to the latter.   Using Rand's own words when testifying, this was "to pay for the land, —the interest that Mr. Kelley had, and the mortgage upon the land."   The witness further testified that De Witt knew of the mortgage on the land, and "wanted me to pay the mortgage and get the title clear," and also that he told Kelley, when making payment, that he "wanted that mortgage paid," to which Kelley replied that "he would send the satisfaction for record."   Rand did not inquire whether Kelley had the note or mortgage in his pos-

session, and did not ask for the satisfaction until some six months later, when Kelley informed him that he would soon obtain it. It is hardly necessary to state that Kelley never paid the amount of the mortgage note to defendant, nor has he accounted for it in any way, and defendant has not satisfied the mortgage of record. October 19, 1896, more than one year after De Witt paid for the land, he conveyed it to the plaintiff, his brother-in-law, by warranty deed, which in fact is a mortgage.

There was no testimony offered or received which tended to show that De Witt, or either of the Rands, knew, prior to the time of the trial hereof, that the firm of A. F. & L. E. Kelley, or either of its members, represented the defendant mortgagee for any purpose. It was then shown by the account books kept by the firm that for many years, as before stated, they had acted as defendant's agents for loaning money on real-estate security, and for collecting and remitting principal and interest as it fell due, and that, in a few instances, principal as well as interest had been paid to or collected by the firm, and remitted to and received by defendant, while he retained possession of the notes, interest coupons and mortgages. The finding of the court must have been predicated upon this evidence alone.

The burden was upon the plaintiff to prove payment to Kelley as defendant's agent, and the testimony fell far short of showing that Kelley was such agent. De Witt employed an agent, Rand, to negotiate with Kelley, the owner of the land, for its purchase; knowing that there was a mortgage upon it, in which defendant was named as mortgagee. The purchase price being agreed upon, the agent paid to Kelley the entire amount agreed upon as the price, instructing him to secure and record the satisfaction piece. It is not pretended that Kelley held out to De Witt or to his agent that he was authorized to act, or had ever acted, for defendant in respect to this mortgage. There is no evidence upon which to base the finding that Kelley was defendant's agent in the transaction, or that the money was paid over to him in that capacity. In fact, it conclusively appears that the full consideration was paid to him as vendor of the land; he promising that the incumbrance should be paid off out of the money received

and should be discharged of record. In this transaction it conclusively appears that Kelley was De Witt's agent for this particular purpose, and that he was not in fact, and was not supposed to be, a representative of the defendant mortgagee.

The judgment is reversed, and a new trial ordered.